Joseph F. WALKER, Jr.

v.

G. R. McCUNE et al.

Civ. A. No. 472–72–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Aug. 24, 1973.

Joseph F. Walker, per se.

D. G. Lowe, Asst. U. S. Atty., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Joseph F. Walker, Jr., brings this action against the warden and certain guards at the Federal Reformatory at Petersburg, Virginia, alleging unconstitutional treatment directed against him as an inmate in that institution. Jurisdiction is attained by virtue of 28 U.S.C. § 1331, see Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L. Ed. 939 (1945), and proceeds under the

theory enunciated in Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1972).

■ Defendants have renewed their previous challenge to this Court's jurisdiction under 28 U.S.C. § 1331. See Walker v. McCune, et al, Mem. Decis. Civil Action No. 472–72–R (E.D.Va., April 4, 1973). Calling attention to Glen M. Sellers' affidavit that plaintiff has suffered, at most, only limited physical injuries, they contend that "as a legal certainty, recovery would be less than the required jurisdictional amount of $10,000." However, the Court takes note of the fact that, in addition to his physical injuries, plaintiff may well have suffered severe personal indignities connected with the sexual assaults of which he complains. Moreover, assuming the plaintiff continues to receive inadequate protection against such attacks, as he alleges, he may well be in danger of severe bodily harm in the future. Accordingly, this Court is not satisfied to a legal certainty that the controversy in question involves less than the required $10,000, and defendants' alternative motion to dismiss on these grounds will be denied. See Wright, Law of Federal Courts, § 133 at 112.

The substantive issues in this action have previously been limited to deciding: (1) whether plaintiff was forced by a prison doctor to perform sexual acts, and (2) whether the plaintiff has been given adequate protection from assaults by other inmates. Order, Walker v. McCune, et al. (E.D.Va., Dec. 18, 1972). Defendants have moved for summary judgment and plaintiff, having been given the opportunity to respond thereto, has not done so. The matter is now ready for disposition.

With respect to the first issue, plaintiff has asserted that it was the institutional physician who allegedly forced the plaintiff to commit sexual acts. However, plaintiff's own statements in rebuttal to defendants' various motions establish the fact that such acts were committed by other inmates after the plaintiff had been released from the prison

hospital facility where he " . . . not only worked as an orderly, but also (sic) *was not subjected to any assault*," plaintiff's "Statement of Rebuttal," filed November 10, 1972, paragraph 1; plaintiff's "Statement of Rebuttal," filed December 28, 1972, at 3–4. (Emphasis added). Apparently, the plaintiff simply contends that the institutional physician is responsible for the assaults that were allegedly committed by other inmates because he, the physician, released the plaintiff from the hospital facility into the general inmate population after the plaintiff had voluntarily remained at the hospital facility for approximately five weeks. Plaintiff's "Statement of Rebuttal," filed December 28, 1972, at 3–4.

■ It can hardly be said that by releasing the plaintiff into the general inmate population the prison physician was "forcing" the plaintiff to perform sexual acts with other inmates. It may well be that the likelihood of plaintiff's being sexually assaulted by other inmates was thereby increased. However, there is no indication in plaintiff's allegations that such a result was intended by the physician and the real issue here relates mainly to plaintiff's second general claim that he was not given adequate protection against such assaults.

In support of his claim that he has not been afforded adequate protection against assaults by other inmates, plaintiff points to three incidents which defendants do not deny. First, plaintiff was attacked by fellow inmates who attempted to sexually assault him on September 12, 1972, while he was housed on the third floor, south of the prison complex. The attack was broken up by guards and the plaintiff was placed in solitary confinement, for his own protection, for a period of about six days.

Second, on September 18, 1972, plaintiff was returned to a cell on the third floor, south. At about 10:30 p. m. on that date, a fire was started by fellow inmates outside plaintiff's cell. At that time plaintiff was again placed in solitary confinement for his own protection.

The next morning he was transferred to the institution hospital, for protection. The plaintiff remained there, working as an orderly, until October 27, 1972, when he was transferred to the third floor, northside, an honor floor.

On October 29, 1972, two days after plaintiff's transfer, three prisoners who had allegedly been involved in the previous incidents of which plaintiff complains, were also transferred to the third floor, northside. On that date plaintiff was again attacked and, according to his allegations, sexually assaulted. A medical examination did show that plaintiff received minor physical injuries in the attack, but did not confirm the allegation that he had been sexually assaulted.

Plaintiff was then placed in a cell on the second floor, south, where he alleges that the inmates who had previously assaulted him had several friends. Because of this fact, plaintiff was again transferred to a "holding cell," apparently for his own protection. Finally, he was transferred to the first floor, north, which transfer he protests.

■ While occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, there does exist a constitutional right of inmates to be afforded at least some degree of protection from attacks by fellow inmates. Penn v. Oliver, 351 F. Supp. 1292, 1294 (E.D.Va., 1972); Woodhouse v. Commonwealth, No. 72-1576 (4th Cir., July 27, 1973). However, in order to establish a deprivation of that right, a prisoner must be able to show either "a pattern of indisputed and unchecked violence, or, on a different level, . . . an egregious failure to provide security to a particular inmate." Penn v. Oliver, *supra*, 351 F.Supp. at 1294. In this case, plaintiff has failed to allege facts, which, if proved, would show either.

■ First, plaintiff has made no allegations which would tend to establish a pattern of undisputed and unchecked violence within the institution in general.

Second, the facts alleged by plaintiff are insufficient to show an egregious failure by officials to provide security for him. It may be that the series of assaults alleged by plaintiff were more than a group of occasional and isolated incidents. However, by plaintiff's own admissions, that series of assaults was parallelled by a series of transfers in which, after each incident, plaintiff was immediately placed in safer surroundings. On one occasion plaintiff was transferred to another area even where no assault had immediately preceded that transfer, but where plaintiff had felt that he was in unsafe surroundings.

It may be that plaintiff could show that placing his previous attackers on the same floor with him after his transfer from the hospital was a mistake and could reasonably have been avoided. However, even assuming there was negligence in this regard, but without deciding that question here, simple negligence hardly amounts to an egregious failure to provide security for the plaintiff.

An isolated act or omission by a prison official that allows an attack to occur and which involves only simple negligence does not, absent special circumstances, create a constitutional violation over which this Court has jurisdiction. Penn v. Oliver, *supra*, at 1294.

Plaintiff's most recent pleading was submitted over seven months ago, which was one month after his transfer to the first floor, north. At that time plaintiff expressed objection to his transfer from the holding cell to the first floor, north. However, plaintiff did not articulate his reasons for objecting to that transfer or allege specific facts to suggest that such transfer placed him in immediate danger. Moreover, plaintiff has not responded to defendants' motion for summary judgment with any information about recent incidents which would suggest that this last placement of plaintiff on the first floor, north, has not helped to remedy his alleged complaints.

In summary, the affirmative acts of prison officials in response to each of the incidents complained of by plaintiff and the series of transfers he has received, as reflected in plaintiff's own submittals to this Court, negate any inference of an egregious failure to provide security for the plaintiff. Therefore, defendants' motion for summary judgment will be granted and judgment will be entered for the defendant.